[Cite as *Maanu v. Bobie*, 2024-Ohio-2395.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| REGINA MAANU, | : | |
| Appellee, | : | CASE NO. CA2024-01-002 |
| | : | O P I N I O N |
| - vs - | | 6/24/2024 |
| | : | |
| FRANCIS BOBIE, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR20090633


Zachary D. Smith, LLC, and Zachary D. Smith, for appellee.

Smith, Meier & Webb, LPA, and Mark D. Webb, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Francis Bobie ("Husband"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division. Specifically, Husband challenges the trial court's classification of certain debts as non-marital although they were incurred during the marriage. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2}   Husband and appellee, Regina Maanu ("Wife"), were married on August 10, 1992.  Thereafter, on September 23, 2020, Wife filed a complaint for divorce against Husband.  The matter proceeded to a four-day final hearing, which concluded on May 20, 2022.  During the final hearing, the trial court heard testimony from Husband, Wife, and several additional witnesses regarding the parties' marital and separate property.  On August 31, 2022, the trial court rendered its decision on the various issues in dispute, and the decree of divorce was journalized on December 6, 2022.

{¶ 3}   In its decision, the trial court discussed the contested property issues, the allocation of debts and expenses, child support, spousal support, and income.  As relevant here, the trial court divided the parties' marital and separate property and found the total marital property equaled $4,904,097.56.  The trial court ordered Husband to pay Wife a lump sum property equalization payment in the amount of $922,591.13.

{¶ 4}   In assessing the total marital property, the trial court considered the parties' debts, including their consumer debt on several credit cards.  Concerning the instant appeal, the trial court allocated a $57,690.09 judgment in favor of American Express to Husband, found that "Husband retain[ed] liability for any [other] debt he failed to disclose" during the case, and held "[Wife] free and clear from any and all liability associated with the same."

{¶ 5}   Husband appealed from the trial court's decision, arguing, in part, that the trial court erred in failing to address and allocate the following debts incurred during the marriage:

(1) Discover Bank (credit card debt) for $15,681.44;

(2) Wells Fargo Vendor Financial Services ("Wells Fargo") for $112,687.95;

(3) PNC Core Visa ("PNC Visa") (credit card debt) for $10,334.58;

- 2 -

(4) Capital One Mastercard (credit card debt) for $8,919.07;

(5) Liberty Mutual Insurance for $706.70; and

(6) UC Health for $312.

**{¶ 6}** Upon review, this court sustained Husband's assignment of error, and determined that the trial court failed to address each of Husband's debts, did not determine whether they were marital or separate debts, and did not allocate them in the divorce decree. *See Bobie v. Bobie*, 12th Dist. Butler No. CA2022-12-119, 2023-Ohio-3293, ¶ 57 ("*Bobie I*"). Specifically, we found that

> [b]oth parties submitted exhibit evidence of their respective debts at trial, and both briefly testified about their debts. * * * However, except for [Husband's] American Express debt, the trial court did not address [Husband's] debts, did not determine whether they were marital or separate debts, and did not allocate them in the divorce decree. * * * The trial court, therefore, erred by failing to address and allocate [Husband's] debts with Discover Bank, Wells Fargo Vendor Financial Services, PNC Visa, Capital One Mastercard, Liberty Mutual Insurance, and UC Health.

*Id.* As a result, we remanded the case for the trial court to address and allocate the six debts specified above.

**{¶ 7}** On remand, the trial court reviewed the transcripts and evidence presented at the final hearing and issued a decision and order in accordance with this court's remand instructions. In its decision, the trial court concluded that Husband had accumulated consumer debt on several credit cards and is the named defendant in several debt collection lawsuits. The trial court detailed the debts at issue, including Husband's accounts with Discover Bank, Wells Fargo, PNC Visa, Capital One Mastercard, Liberty Mutual Insurance, and UC Health, and found that, aside from the UC Health debt, each of the six debts were "all dated after the valuation date established by the court." The trial court further found that Husband's" testimony concerning his debt lacked

transparency, and that "Husband incurred the consumer debt beyond the valuation date for personal, non-marital purposes." Thus, the court concluded that, aside from the outstanding account with UC Health, the above outlined debt is Husband's separate debt and he is solely responsible for the same.

{¶ 8} Based on the above, the trial court recalculated the total marital property and ordered Husband to pay Wife a revised sum of $913,593.25 within 90 days of the order. Husband now appeals the trial court's decision on remand and raises the following assignment of error for our review:

{¶ 9} WHEN DISTRIBUTING MARITAL PROPERTY, THE TRIAL COURT ERRED IN IGNORING THE COURT OF APPEAL'S REMANDED ORDER AND FAILING TO DIVIDE MARITAL DEBT.

{¶ 10} On appeal, Husband claims the trial court erred in finding that consumer debt in his name was incurred after the valuation date set by the trial court. According to Husband, the valuation date established by the court was May 20, 2022, and each of the debts were incurred prior to that date. As such, Husband concludes the trial court erred in classifying the debts as separate, non-marital property, and in failing to divide it between the parties.

{¶ 11} As we noted in *Bobie I*, after determining the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (D); *Wilson v. Wilson*, 12th Dist. Warren No. CA2004-04-037, 2004-Ohio-6248, ¶ 5. "Although the statute does not mention debt as an element of separate or marital property, the rules of marital assets have consistently applied to marital and separate debt." *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 35. Debts incurred during the marriage are presumed to be marital. *Bobie I* at ¶ 56. Thus, when debt is accumulated

- 4 -

during the marriage, the burden is on the party seeking to have that debt classified as a separate liability to demonstrate, by a preponderance of the evidence, that such debt was the separate obligation of the other spouse. *Nichols-Ross v. Ross*, 12th Dist. Butler No. CA2008-03-090, 2009-Ohio-1723, ¶ 26.

{¶ 12} We review the trial court's classification of property and debt as marital or separate under the manifest weight of the evidence standard. *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 13. The weight of the evidence concerns "the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 11. There is a presumption that the findings of the trial court are correct, as the trial judge is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony." *Id.* Our analysis requires us to review the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice. *Sieber v. Sieber*, 12th Dist. Butler Nos. CA2014-05-106 and CA2014-05-114, 2015-Ohio-2315, ¶ 19.

{¶ 13} In *Bobie I*, we remanded the case for the trial court to address and allocate six of Husband's debts. Upon remand, the trial court did not conduct an additional hearing but considered the evidence of Husband's debt presented at the final hearing, including the hearing's transcripts and Exhibits S and TT. Relevant here, Exhibit S is a compilation of Husband's debts, including the six debts at issue in the instant appeal, and reveals the following details:

> (1) a $15,681.44 judgment rendered against Husband in favor of Discover Bank on April 19, 2022;

(2) a $112,687.95 judgment rendered against Husband in favor of Wells Fargo on March 29, 2022;

(3) PNC Visa credit card debt in the amount of $10,334.58 as of October 13, 2021;

(4) Capital One Mastercard credit card debt in the amount of $8,919.07 as of August 16, 2021;

(5) an account with Liberty Mutual Insurance in the amount of $706.70 as of October 5, 2021; and

(6) an account with UC Health in the amount of $312.00 for services rendered on October 20, 2020.

Husband claims each of these debts were incurred "during the marriage," and should have been divided between the parties.

{¶ 14} The crux of Husband's assignment of error concerns the valuation date established by the trial court. On appeal, Husband and Wife disagree as to the valuation date selected by the trial court. Wife claims that in accordance with the court's Local Rule DR 28(B)(2)(b), the trial court established December 31, 2020 as the date of valuation and division of marital property. Pursuant to that rule, "[t]he valuation date of marital property will be presumed the last day of the calendar quarter following the filing of the complaint unless a party, at least seven (7) days prior to the pretrial, files a motion to establish an alternate date." Wife filed for divorce on September 23, 2020, rendering the last day of the following quarter to be December 31, 2020.

{¶ 15} Husband, on the other hand, claims the trial court established May 20, 2022, i.e., the last day of the final hearing, as the valuation date. In support, Husband cites to well-settled Ohio law, which states that, in "[g]eneral * * *, the proper date for the termination of a marriage, for purposes of property division, is the date of the final divorce hearing." *Dellinger v. Dellinger*, 12th Dist. Butler No. CA2015-12-229, 2016-Ohio-4995, ¶ 20, citing *Fillis v. Fillis*, 12th Dist. Clermont No. CA2008-10-093, 2009-Ohio-2808, ¶ 8;

*see also Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 24. Husband also relies upon language from this court's decision in *Bobie I*, in which we "unequivocally stated, 'these debts were all incurred during the duration of the marriage, which the trial court determined to be from August 10, 1992, until May 20, 2022 (the date of the final hearing).'"

{¶ 16} After our review of the record, we find Husband's claim regarding the valuation date to be disingenuous given the history of the case, the arguments raised by Husband in *Bobie I*, and the repeated references throughout the record to the December 31, 2020 date.

{¶ 17} First, although Husband is correct that the proper date for the termination of a marriage, for purposes of property division, is generally the date of the final divorce hearing, it is well settled that a trial court has discretion to establish an alternate valuation date. This includes an alternate date set forth in the trial court's local rules. *Dellinger* at ¶ 19-24; *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 34-35. Specifically, "pursuant to R.C. 3105.171(A)(2)(b), if the [trial] court finds the time period between the date of the marriage and the date of the final divorce hearing would be 'inequitable,' the [trial] court may select dates that it considers equitable in determining marital property." *Waligura v. Waligura*, 12th Dist. Clermont No. CA2022-11-076, 2023-Ohio-3747, ¶ 30. To do this, the trial court need not make an explicit "equitable" or "inequitable" finding. *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2021-08-078, 2022-Ohio-1805, ¶ 51. Rather, based on the plain language of the statute, the trial court is merely required to "select dates that it considers equitable in determining marital property" if the court determines that using either the date of the marriage or the date of the final divorce hearing "would be inequitable." *Id.*

{¶ 18} In this case, Husband does not argue the trial court abused its discretion in

selecting a certain valuation date. Instead, he emphasizes that the trial court determined the duration of the marriage was from August 10, 1992 until the date of the final hearing (May 20, 2022), and that the relevant debts were incurred during that time. While this may be true, the record does not indicate the trial court used the date of the final hearing as the valuation date. Instead, the record reflects the trial court referenced the December 31, 2020 date in the divorce decree when valuing marital assets, including Husband's various bank accounts, and referenced the "established valuation date" in its decision and order on remand. The record also reflects the parties submitted valuations consistent with the December 31, 2020 date. Although the record could be clearer regarding the chosen date, a specific reference to the valuation date in the trial court's decision or order is not required to establish the valuation date. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, ¶ 34 (proceeding with the valuation date agreed to by the parties on appeal where the trial court made no specific reference to the date in its decision and order).

{¶ 19} Notwithstanding the above, we note that this court has already addressed the valuation date used by the trial court in this case. *Bobie I* at ¶ 37-49. In *Bobie I*, Husband acknowledged the December 31, 2020 valuation date established by the trial court, and argued in his third assignment of error that the trial court erred in valuing certain marital property on a date other than December 31, 2020. *Bobie I* at ¶ 41-43. In overruling Husband's assignment of error, this court recognized that "[t]he trial court established December 31, 2020, as the property valuation date," and that "Husband d[id] not challenge th[at] valuation date." *Bobie I* at ¶ 38. Although we later stated in that opinion that the trial court determined the duration of the marriage to be from August 10, 1992, until May 2, 2022, this was not in reference to the date used to value the marital property. Instead, our decision consistently refers to December 31, 2020 as the valuation

date established by the trial court.

{¶ 20} In light of our findings in *Bobie I*, as well our review of the entire record, it is clear the trial court set December 31, 2020 as the valuation date for valuing and allocating marital property.[1] Turning to the issue raised on appeal, we will now address Husband's argument that the trial court "seemingly ignored the explicit language used by [this court]," when it held that the relevant consumer debt was dated after the valuation date established by the trial court. According to Husband, the "explicit language" ignored by the trial court is found in *Bobie I*, wherein we stated that Husband's argument in his fourth assignment of error involved debts incurred "during the marriage," not debts incurred after the date of divorce.

{¶ 21} As discussed above, a careful reading of *Bobie I* in its entirety does not support Husband's position on appeal. That is, in *Bobie I*, we found the trial court committed reversible error when it only addressed Husband's debt with American Express, and did not otherwise "address Husband's debts, did not determine whether they were marital or separate debts, and did not allocate them in the divorce decree." In so doing, we noted the trial court's error in failing to "address and allocate six of Husband's debts," despite evidence of their existence prior to the finalization of the parties' divorce. In using this language, we did not decide, as Husband implies, that the debt at issue was marital or separate, nor did we find the debts were incurred before the relevant valuation date. Instead, we simply ordered the trial court to address each of the debts that it failed to consider or allocate during the underlying proceedings.

{¶ 22} After our review, we find the trial court complied with this court's order on

---

1. We also note that, given our analysis of Husband's assignment of error concerning the valuation date, Husband's argument in the instant appeal advocating for a different valuation date is precluded by the law of the case doctrine. *See Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984) ("the decision of a reviewing court in a case remains the law on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels").

remand by analyzing, assessing, and allocating Husband's debts. Husband submitted Exhibits S and TT as evidence of his debt, which, as discussed above, included copies of two judgments obtained against Husband by creditors, as well as statements for other consumer debt. Husband's testimony regarding Exhibits S and TT was minimal and did not disclose any details regarding the debts aside from their total amounts and the dates the documents were prepared. Based upon this evidence in the record, we find the trial court did not err in concluding the debts with Discover Bank, PNC Visa, Capital One Mastercard, and Liberty Mutual Insurance were incurred beyond the valuation date and are Husband's separate debts. This is because the evidence produced by Husband regarding these debts is all dated after December 31, 2020.

{¶ 23} Husband argues in his reply brief that, even if December 31, 2020 is the valuation date, the totality of the circumstances supports that he incurred the debts much earlier than the date the judgments and/or statements were provided. Specifically, Husband claims each of his outstanding debts are "judgments" obtained against him, which took "substantial time" to work through the judicial process, and therefore, common sense dictates he incurred the balances prior to December 31, 2020. Notwithstanding Husband's argument, the record is clear that Husband failed to present any evidence to establish when the individual balances on these accounts were incurred. Marital debt has been defined as any debt incurred *during the marriage* for the joint benefit of the parties or for a valid marital purpose. *Bobie I* at ¶ 56. (Emphasis added.) In this case, Husband did not submit any evidence that any debt was incurred on the Discover Bank, PNC Visa, Capital One Mastercard or Liberty Mutual Insurance accounts prior to the December 31, 2020 valuation period. Instead, Husband merely presented evidence of a judgment obtained by Discover Bank on April 19, 2022, as well as credit card statements from October 13, 2021; August 16, 2021; and October 5, 2021. Despite Husband's

argument to the contrary, we decline to assume he accrued some, all, or part of these balances prior to the December 31, 2020 valuation date without any evidence establishing the same.

**{¶ 24}** Regarding the final debt, i.e., the $112,687.95 judgment rendered against Husband in favor of Wells Fargo on March 29, 2022, Husband provided an invoice in addition to the judgment entry. The invoice is dated August 26, 2021, and reveals Husband accrued several late charges on his account between November 30, 2020 and July 30, 2021. The invoice does not provide any additional detail regarding the ongoing balance owed on Husband's account or when any charges, aside from late charges, were incurred. Pertinent here, the invoice reveals Husband accrued $114.28 in late charges on November 30, 2020 and $114.28 in late charges on December 30, 2020. Given that the late charges were accrued prior to the valuation date of December 31, 2020, these debts are presumed to be marital. *Bobie I* at ¶ 56.

**{¶ 25}** Despite the presumption that $228.56 of the Wells Fargo judgment is marital debt, the trial court further determined that Husband incurred each of the consumer debts "for personal, non-marital purposes." On appeal, Husband does not challenge the court's additional finding, and solely argues the trial court ignored this court's "directives upon remand" and incorrectly relied upon an "inaccurate analysis of dates" when concluding the debts were non-marital. Because Husband did not raise an issue regarding the trial court's additional finding that the debts were incurred for personal, non-marital purposes, we decline to address the issue here. Consequently, any debt that was found to be accrued by Husband and for Husband, is Husband's separate debt and should be allocated to him as his sole responsibility. *See e.g., Gebremikael v. Aruma*, 12th Dist. Butler No. CA2022-02-022, 2022-Ohio-3686, ¶ 51. As such, we find no error in the trial court's decision allocating the entire Wells Fargo debt to Husband.

{¶ 26} Based on all the foregoing, we find the trial court complied with our mandate on remand by considering Husband's debts and allocating them in accordance with Ohio law. We further conclude the trial court's decision finding that Husband accrued debts with Discover Bank, PNC Visa, Capital One Mastercard and Liberty Mutual Insurance after the established valuation date is supported by the manifest weight of the evidence. While the trial court erred in concluding that the entire Wells Fargo debt was accrued after the valuation date, Husband does not challenge the court's finding that he incurred such debt for personal, non-marital purposes and therefore, is his responsibility. Accordingly, finding no merit to the arguments raised herein, we overrule Husband's assignment of error.

{¶ 27} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.